FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

SEP 0 9 2021

TAMMY H. DOWNS, CLERK
By: _____
DEP CLERK

## UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

LARRY FLUHARTY and
KATHY FLUHARTY, individually and
on behalf of all others similarly situated,

**Plaintiffs,**

CIVIL ACTION NO. 4:21-cv-800-BRW

v.

LUMBER LIQUIDATORS, INC., a Delaware
Corporation; and DOES 1 through 100, inclusive,

**Defendants.**

## CLASS ACTION COMPLAINT

COME NOW Plaintiffs, Larry Fluharty and Kathy Fluharty, individually and on behalf of

all others similarly situated, by and through their attorneys, Gill Ragon Owen, P.A., and for their

Class Action Complaint against Lumber Liquidators, Inc. ("Defendant" or "Lumber

Liquidators"), do hereby state and allege as follows:

This case assigned to District Judge Wilson
and to Magistrate Judge Ray

### INTRODUCTION

1.      Defendant develops, manufactures, advertises, sells, and distributes bamboo

flooring under the brand name Morning Star Strand Bamboo Flooring (the "Product") throughout

the United States for installation in homes and other structures.

2.      Defendant markets that the Product is durable and meets industry standards, and

markets and warrants that the Product has a fifty (50) year warranty, a warranty that when

ultimately provided well after purchase to the buyer does not in actuality cover the types of

damages alleged herein. Defendant provided a reasonable expectation to consumers and the

industry that the Product would have a usable lifetime of at least fifty (50) years.

1

3.      Contrary to Defendant's advertising and representations, the Product is subject to premature cracking, splitting, warping, and shrinking, all well before the misleading warranted useful life.

4.      The Product's various modes of failure potentially cause damage to other building components and render the Product susceptible to premature failure.

5.      Plaintiffs bring this action to seek redress for damages caused by Defendant's wrongful conduct

## JURISDICTION

6.      This Court has jurisdiction over this case under 28 U.S.C. 1332(d)(2) in that: (1) this action is a class action with more than one hundred (100) Class Members; (2) Defendant Lumber Liquidators, Inc. is a Delaware corporation, based in the state of Virginia, and is thus a citizen of the state of Delaware; (3) Plaintiffs and all Class Members are United States citizens; and (4) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs.

## VENUE

7.      Venue in this Court is proper: (1) pursuant to 28 U.S.C. 1391(a)(1) in that Defendant does sufficient business in this District to subject it to personal jurisdiction herein; and (2) pursuant to 28 U.S.C. 1391(a)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this District.

8.      Venue in this Division of the Eastern District is proper because a substantial part of the events or omissions which give rise to the claim occurred in Pulaski County.

2

**PARTIES**

9.      Plaintiffs Larry and Kathy Fluharty (the "Fluhartys") are Arkansas residents and, at all time pertinent to this lawsuit, owned a home located at 801 N. Pierce St., Little Rock, AR 72205.

10.      Defendant Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business in Toano, Virginia.  Upon information and belief, Defendant conducts business within the United States, and more specifically within the state of Arkansas. Also, upon information and belief, Plaintiffs allege that Defendant was responsible for, or otherwise involved in, the development, manufacture, marketing, sales, warranting and distribution of the Product.

11.      Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 1 through 100, inclusive, ("Doe Defendants") and therefore sues these Doe Defendants by fictitious names. Plaintiffs will amend this Complaint to allege the true names and capacities of these fictitiously-named Doe Defendants when they are ascertained.  Each of the fictitiously-named Doe Defendants are responsible for the conduct alleged in this Complaint and Plaintiffs' damages were actually and proximately caused by the conduct of the fictitiously named Doe Defendants.

12.      Plaintiffs are informed and believe, and on that basis allege, that each of these Doe Defendants was the agent, joint venture, and/or employee of Defendant and/or the Doe Defendants, and in doing the things hereinafter alleged, were acting within the course and scope of the agency, joint venture, and employment with the advance knowledge, acquiescence, or subsequent ratification of Defendant and each and every other Doe Defendant.

3

## FACTUAL ALLEGATIONS

**A.    The Fluhartys Factual Allegations**

13.    On or about July 9, 2019[1], the Fluhartys purchased the Product from their local Lumber Liquidators store located at 6 Freeway Drive, Little Rock, Arkansas 72204.

14.    At that time, the Fluhartys had taken on a home renovation project. The Fluhartys were remodeling a home that they intended to sell upon completion. The Product was purchased as the flooring for the home renovation project.

15.    In the weeks leading up to July 9, 2019, the Fluhartys conducted online research into various types of flooring products. Kathy Fluharty recalls seeing Lumber Liquidators online advertisements for its bamboo flooring during this time period. The Fluhartys decided to inquire about bamboo flooring at their local Lumber Liquidators location.

16.    On or about July 9, 2019, the Fluhartys visited their local Lumber Liquidators location to inquire about their flooring products. During this visit, the sales associate directed them to their Morning Star Strand Bamboo Flooring. During the sales associate's pitch, he described how the Product was made, discussed the quality of the materials used, and discussed the high quality of manufacture. He further noted that the Product was "indestructible." He stated that it would not dent. To support this claim, the sales associate repeatedly struck a sample of the Product with a with a separate sample made of oak in an attempt to show that the oak sample would dent, but the bamboo-based Product would not sustain damage.

---

[1] After the Fluharty's purchased the flooring on July 9, 2020, but before it could be installed, the flooring was stolen. As a result, the Fluharty's used insurance proceeds to purchase replacement flooring. On September 20, 2019, the Fluharty's purchased the exact same flooring that they purchased previously on July 9, 2019, based on the same representations and warranties given to them at the time of the original purchase. The flooring purchased on September 20, 2019 is at issue in this case.

17.     The sales associate explained to the Fluhartys that the Product had a lengthy 50-year warranty. When he made this claim, the sales associate knew that the Fluhartys were purchasing the flooring to install into their home that they intended to sell immediately upon completion of their remodeling project. However, the sales associate concealed from the Fluhartys that the warranty was non-transferrable and would not protect a subsequent purchaser of the home.

18.     In reliance on the information of the quality of the Product and the protection that the 50-year warranty would provide, the Fluhartys purchased the Product and all of the recommended companion products, including the recommended cleats, nailer, and vapor barrier coating.

19.     Shortly thereafter, Larry Fluharty, an experienced contractor, installed the Product pursuant to the Product's instructions. Notably, the installation instructions provided for a lengthy acclimation period, with which the Fluhartys carefully complied.

20.     Within weeks of installation, and while the property remained unoccupied (but climate controlled), the Fluhartys observed noticeable defects with the Product. The Product began to warp and developed visible cupping along each board.

21.     The Fluhartys contacted Defendant's Customer Care Team on September 29, 2020, regarding the Product's defects. On September 30, 2020, a member of Defendant's Customer Care Team contacted the Fluhartys to gather additional information about the defects. As a part of this correspondence, Defendant asked the Fluhartys to provide pictures of the product defects. Defendant also informed the Fluhartys that a third-party inspection may be necessary to determine the cause of the issue for warranty purposes. Defendant's customer care

5

representative further explained that upon receipt of the picture evidence, the Fluhartys would be contacted within 48 hours.

22.     On October 1, 2020, the Fluhartys promptly complied with the request for picture evidence. Yet, no representative of the Defendant ever contacted the Fluhartys. Likewise, Defendant did not attempt to arrange any a third-party inspection. Instead, the Fluhartys had to place multiple phone calls to the Defendant to follow up on their warranty claim. These calls were never answered, and messages were not returned.

23.     On October 23, 2020, the Fluhartys were finally able to speak with a member of Defendant's Customer Care Team who informed them that Lumber Liquidators was refusing to honor their warranty due to "ambient moisture," despite the fact that no inspection had ever been conducted to come to such conclusion.

24.     The Fluhartys appealed this decision within the Defendant's Customer Care Team to one of the Defendant's Senior Escalation Complaint and Response Specialists. Again, the Fluhartys had to place multiple phone calls to the Defendant to follow up on their warranty claim. Like before, these calls were never answered, and messages were not returned.

25.     Because of Defendant's unresponsiveness, the Fluhartys filed a complaint with the Arkansas Attorney General's office. As it had done with the Fluhartys' initial claim, Defendant did not respond to this complaint.

26.     While the Fluhartys continued to wait for some type of response from Defendant, the Product continued to warp, cup, and display other defects. This made the property uninhabitable and unsuitable for resale.

27.     The state of the Product installed in the property necessitated it being replaced. Despite multiple phone calls and attempts to contact, Defendant remained unresponsive. The Fluhartys sought advice from the Attorney General's office as to what to do next.

28.     The Attorney General's office advised the Fluhartys to uninstall the Product but, before doing so, to take pictures of the flooring. The Fluhartys subsequently took numerous photos of the installed Product before removing it. The Fluhartys are still in possession of the removed Product.

29.     Finally, on December 23, 2020, the Defendant's Senior Escalation Complaint and Response Specialist informed the Fluhartys that because they had removed the product (in reliance upon the Defendant's previous determination of purported ambient moisture) the Defendant could not conduct an inspection and thus, the Fluhartys claim was denied.

## B.     Product Manufacturing Process

30.     The Product is made by slicing bamboo into strips, cutting the strips into desired widths, immersing the strips in an acid solution to eliminate sugars and starch, (in some cases) staining the material, binding it together into planks using an adhesive, and finally applying a curing lacquer. Plaintiffs are informed and believe that Defendant has been manufacturing and selling the Product since approximately 2008 and as late as 2020. Defendant has sold the Product to thousands of consumers throughout the United States, including Arkansas. The Product was marketed and sold for use in homes and other structures.

31.     Defendant concealed from and/or failed to disclose to Plaintiffs and Class Members the defective nature of the Product.

> a.      Plaintiffs are informed and believe that Defendant used a variety of methods to communicate representations about the durability and quality of the

7

Product and about its misleading warranty to the general public and contractors in the flooring installation business. These representations were published on Internet sites such as YouTube, on Defendant's website, at trade, building, and home shows typically open to the general public and contractors who service ultimate consumers of the Product, and at Defendant's product retail stores. Defendant communicated a common and repeated theme regarding the Product:

    i. "Twice as hard as oak, strand bamboo is an optimal choice for busy homes when durability is needed to stand up to the wear and tear of family foot traffic, active kids and even pets."

    ii. "To make strand bamboo, shredded bamboo fibers are compressed under extreme heat and pressure. This manufacturing process yields flooring that is even harder and more dense than traditional bamboo floors."

    iii. "Morning Star Bamboo Flooring … is produced from old growth bamboo reeds that are at least 4 years old, thereby increasing hardness. Morning Star Bamboo Flooring creates a naturally beautiful and ecologically friendly product that evokes a feeling of luxury."

32. At the time of sale of the Product to Plaintiffs and the Class members, Defendant stated that its flooring meets accepted industry standards for wear resistance, finish adhesion, and moisture content.

33. The hardness of the Product is a misleading indicator of whether it can withstand scratching and denting better than other hardwood flooring products.

34. Defendant knew that it did not manufacture the Product in such a way as to withstand scratching and denting better than other hardwood flooring products.

8

35.     By focusing on the hardness of the Product rather than the other factors that cause the defects experienced by Plaintiffs and Class Members, Defendant intended to mislead consumers into believing its representations that the Product "does not scratch easily" and is "virtually scratch and dent resistant."   These statements were and are false and misleading because Defendant deliberately failed to disclose that factors other than hardness will result in the Product being easily scratched and dented.

36.     Defendants also failed to disclose that its manufacturing process did not create a product that could prevent scratches and dents better than other hardwood flooring products.

37.     Defendant represented that the Product met industry standards for acceptable moisture content.

38.     Bamboo, like wood flooring products, is hydroscopic, meaning it gains and loses moisture as the air around it gains and loses moisture.

39.     The typical moisture content in wood flooring products is 6% to 9%. See https://hardwoodfloorsmag.com/2017/08/01/understanding-moisture-content-wood/ (last visited August 16, 2021); http://www.greenbuildingsupply.com/Not-All-Bamboo-is-Created-Equal (last visited August 16, 2021).

40.     By claiming that the Product met moisture content standards, Defendant deliberately misled consumers to believe that the Product's moisture content is within an acceptable range.

41.     Defendant's installation instructions provide that the Product may contain up to 12% moisture at installation.

9

42.     Defendant failed to disclose to consumers that the Product may contain an elevated moisture content such that even after acclimatization it will fail of its essential purpose and crack, cup, warp, gap, shrink, and otherwise degrade in a defective manner.

43.     Defendant advertised and sold the Product for use in homes and other structures, omitting to disclose to Plaintiffs and Class Members, their agents, or contractors material facts concerning the Product, including, but not limited to, concealing that the Product was defectively formulated, was and is susceptible to warping, splitting, shrinking, and splintering, does not otherwise perform as represented, and fails far in advance of its purported fifty year warranted life. All of these facts are material to a reasonable consumer. The Product did not perform in accordance with the reasonable expectations of Plaintiffs and Class Members in that it was not durable and suitable for use as a flooring system in their homes and other structures.

44.     The Product is a manufactured wood product that is defectively designed, tested, and manufactured, and will warp, buckle, cup, splinter, and unreasonably scratch and dent when used in its intended manner. These failures are common in the Product regardless of when, where, or how it is installed.

45.     As a result of Defendant's misconduct, Plaintiffs and Class Member have suffered actual damages in that the flooring in their homes and other structures have prematurely failed and will continue to do so, potentially damaging other building elements, causing continuous and progressive damage to property, and requiring Plaintiffs and Class Members to expend thousands of dollars to repair or replace the flooring long before the expiration of the "useful life" of the Product as represented by Defendant.

46.     Due to the defective nature of the Product, it is not sufficiently durable to serve as flooring. The following photographs depict some of the problems Plaintiffs and others have

10

experienced with the Product.











47.     Because of the relatively small size of the typical damages, and the modest resources of most homeowners and of the individual Class Members, it is unlikely that most Class Members could afford to seek recovery against Defendant on their own. A class action is therefore the only viable, economical, and rational means for Class Members to recover from Defendant for the damages they have caused.

**C.     Defendant's Knowledge of and Notice that the Flooring was Defective**

I.     *Gold v. Lumber Liquidators*

48.     Defendant is well aware of the problems related to the Product.

49.     Lumber Liquidators has already been the defendant in a large class action lawsuit arising from the same defective product. *Gold v. Lumber Liquidators, Inc.*, No. 3:14-cv-05373-TEH (N.D. Cal.) ("Gold"), was class action lawsuit filed against Defendant on December 8,

13

2014 in the Northern District of California. The case challenged the same product at issue here, Morning Star Bamboo Strand Flooring. As in this action, the plaintiffs in *Gold* claimed that Defendant falsely advertised, marketed, warranted, and guaranteed the Morning Star Strand Bamboo flooring as tough, durable, high-quality, and free of manufacturing defects. The *Gold* plaintiffs alleged, among other things, that the flooring defects include shrinking, cupping, warping, scratching, and cracking.

50.     The *Gold* matter concluded when a nationwide settlement class for those that purchased the Product between January 1, 2012 and March 15, 2019 was approved.

51.     Defendant continued to sell and market the Product throughout the pendency of *Gold* and after the March 15, 2019 cutoff date contemplated in the settlement class definition.

II. Customer Complaints

52.     Defendant also received warranty claims and complaints from customers concerning the Product. Websites such as www.mythreecents.com and www.consumeraffairs.com contain complaints about the Product dating back to 2011 and 2012. Defendant has continued receiving complaints about the Product well into 2020 and beyond. These complaints further continue to put the Defendant on notice concerning the defective nature of the Product.

53.     Upon information and belief, Defendant pays to be a member of www.consumeraffairs.com, which means that it is notified of each complaint and has the option of responding to each complaint. A review of this website demonstrates that Defendant does review and respond to customer posts on www.consumeraffairs.com.

54.     The following is an example of a complaint about the Product from December 15, 2018 on https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=12 (last

14

visited August 16, 2021):

**Esther of Denver, PA**  Verified Reviewer
Original review: Dec. 15, 2018

I purchased a Morning Star Strand Bamboo flooring from Lumber liquidators three years ago. We aired out the bamboo for several weeks in the space before installation. Even longer than the recommended time. Our installer followed all instructions given. Soon after installation, cracks began to appear in the flooring. The installer decided more spacers must be needed. He installed several. The cracks continued to worsen, appearing all throughout the floor. It pulled away from all the walls, the spacers bowed and pulled apart leaving gaping holes. After having the floors repaired four or five times with absolutely no resolve, we filed a complaint with Lumber Liquidators. They informed us that it was due to moisture levels in our house and gave us a $500 credit. This did nothing and the cracks continue.

Then we found out that there is a national lawsuit throughout the United States and that the flooring itself is actually defective. Lumber Liquidators knew this at the time of our complaint and still refused to acknowledge that the floors need replacing. They have not stood behind their product in any way nor have they made any effort to correct the problem for us. To this moment, we have cracks all over our flooring. It is wildly unacceptable and embarrassing. Our house that we completely remodeled and poured a lot of money into looks absurd. We could not be more disappointed with Lumber Liquidators or their profoundly poor customer service.

55.     The following complaints are also from www.consumeraffairs.com and relate to

complaints made to Defendant regarding the Product.

**Judy of Ione, CA** Verified Reviewer
Original review: Oct. 2, 2013

We purchased dark stranded bamboo flooring from Lumber Liquidators. We were very particular to request a very durable floor that would not scratch easily and had the best resistance for moisture spills etc. This flooring was highly recommended by their salesman as one of the most durable. We installed this flooring throughout our entire downstairs living room, dining room, and kitchen. This flooring now has scratches everywhere!! Scratches from everything and anything that is slid across the floor such as: unoccupied bar stools that have protective plastic caps, TV trays that were only slid forward enough to allow us to eat while sitting on the couch, and even an empty 5 gallon bucket when slid a

couple of inches. There are many, many scratches all over the house and we have no idea how they got there.

All of these scratches show up as bright white lines on the dark flooring which obviously was not treated well enough to make the surface as durable as we were told. We have no pets, no children at home, no high heels, and all of the heavy furniture have the felt pads to protect from scratching the floor. The flooring was only installed in April/May of this year. We have a thirty-year warranty on the flooring and have called the Lumber Liquidators customer services department to complain about the flooring and see what they will do to honor the product warranty.

We are waiting for Lumber Liquidators to get back to us. How disappointing to spend so much money on a product recommended by Lumber Liquidators sales and yet it absolutely does not meet the standards we requested. DO NOT BUY FROM LUMBER LIQUIDATORS!!!! They sell less than quality materials!!!![2]

**William of Summerton, SC**  Verified Reviewer
Original review: March 15, 2019

Morningstar MS XD - This floor is absolute junk. I will be filing suit against LL. Totally misrepresented the product and misinformed me on installation. Cupping, fading after 6 months and top coat flaking. Nailed down to new sub-flooring and underlayment and used their recommended vapor barrier.[3]

**James of Belle Vernon, PA**  Verified Reviewer Verified Buyer
Original review: June 24, 2019

We had to set the bamboo we purchased from Lumber Liquidators in Greenburg for so many days to get it acclimated to our climate. We installed it, but then now I have a couple of panels that are splitting. We let them know but then there's a lawsuit regarding that brand, so it's a problem. It's started about four months in

---

[2] https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=122 (last visited August 16, 2021)

[3] https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=10#sort=recent& filter=none (last visited August 16, 2021)

that the lip that catches on the other board splits. I'm gonna have to pull the floor up in the dining room and redo it. I'm not happy with my flooring.[4]

**Ron of Eagle Point, OR**  Verified Reviewer
Original review: Sept. 26, 2019

Lumber Liquidators recently opened a location in Medford OR and transferred a manager from Las Vegas to run the store. After a class action lawsuit was filed and settled for $36,000,000.00 regarding Morningstar Bamboo flooring, Lumber Liquidators sold us the exact same bamboo flooring for 2 houses in Arizona and Nevada so moisture isn't a problem. Shortly afterwards we noticed problems with the floor and I reported to the manager that the floor was "snap, crackle, and popping." His response to me was that the issue is our fault: we didn't buy LL's pad or have them install, etc, and that we should glue the same floor down to a concrete slab on the second house. Glue to concrete, is he crazy? What then happens to the glued floor if and when the concrete cracks or shifts? We're contractors and we're not stupid.

Also, the floor was a acclimated for 2 months and the rest of the product is still in the wrapping. We must remove the floor planks from the wrapper to acclimate it, But removing the wrapper voids any return! Now the floor is buckling, corners and edges are curling and there is no way to keep them down. The click lock design is defective. It doesn't hold together. The manager told us that we could return the product if we weren't satisfied. Now he says that we can return unopened flooring FOR AN EXCHANGE ONLY, but we must take it all the way back to Oregon to do so. Knowing now that there was a class action lawsuit and Lumber Liquidators still sold us this defective product, we can't trust their advice for anything.[5]

**Mike of Brownsville, VT**  Verified Reviewer
Original review: April 5, 2020

Worst purchase ever. Just spent $4k on new Morningstar XD Bamboo floors and within 2 wks they are scratched everywhere and don't sit flat on the floor. Local

---

[4] https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=7 (last visited August 16, 2021)

[5] https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=5 (last visited August 16, 2021).

store told me to just click and float the floors on the padding but another told us no padding and should have been glued. Dark walnut color gets white scratches so easily the floor looks like it's been down for 10 years. Now they tell me it's already discontinued. Shame on them for even selling such a bad product. I am so mad![6]

56.     Other  websites  include  similar  customer  complaints.  For  instance,  on

http://www.flooring.net, there is a string of complaints concerning the failure of the Product:

**Review Date: 5/20/19**
**Name:** A Zannella
**Location:** East Stroudsburg Pa
**Model:** Bamboo
**Satisfaction Rating:**
Very Unsatisfied, 1 out of 5
**Review:**
**"Worst Mistake Ever"**
I feel like I have been had! And I blame LL for letting me make this purchase. I guess buyer be ware! First day floor was installed it started cupping. There is no moisture and it was installed by a professional. Not sure what to do right now. Spend more money and rip it up? Or cover it with a rug! Extremely Disappointed![7]

**Review Date: 2/13/20**
**Name:** Linda Rigdon
**Location:** Brandon, ms
**Model:** Prqchsbamaj
**Satisfaction Rating:**
Very Unsatisfied, 1 out of 5
**Review:**
**"Bamboo floor"**
We spent 10 k on these floors and now they are bucking and bubbling every where. would never buy from lumber liquidators again. Checking to see if we can file a class action law suit.[8]

57.     Defendant's conduct shows actual notice and knowledge of the Product's defects

---

[6] https://www.consumeraffairs.com/homeowners/lumber_liquidators.html?page=4 (last visited August 16, 2021).

[7] https://www.flooring.net/wood-flooring/reviews/morning-star/ (last visited August 16, 2021)

[8] https://www.flooring.net/wood-flooring/reviews/morning-star/ (last visited August 16, 2021)

as it has responded directly to complaints on the aforementioned websites and others. Defendant will blame the defects with the Product on care and/or installation.

58.     Similarly, the Better Business Bureau ("BBB") website has reported hundreds of complaints against Defendant since 2013, some of which relate to the defective nature of the Product.

59.     Like www.consumeraffairs.com, the BBB notifies Defendant of each complaint and Defendant has the option of responding to the consumer making the complaint.

60.     On information and belief, Defendant's CEO was put on notice that the company was knowingly selling a product containing defects and his response was to issue a refund without demanding the customer go through the warranty process:

> Morning Star bamboo flooring from LL seems to be a major issue. I installed 1800sqft using a licensed flooring contractor after labor day 2014. I left the product on studs inside the house in an empty room for over a month as directed by salesman at LL; with a fan blowing from the floor and ceiling fan above. I cut off the ends of the boxes also as directed. Within a week; the floor started to cup in the dining room in front of the china cabinet and is now cupping at various places throughout the house. LL customer service replied to my letter of complaint with the same reply; cupping is caused from moisture above and below the wood. We installed with MS adhesive directly to prepared concrete pad of house we just purchased. Seems to me LL is knowingly selling product that has systemic issues. I wrote to the CEO about being charged "restocking" fee on $10,000 purchase. I was not happy to be charged because I ended up with 14 extras cartons with only 1 carton that was waste. Installer wasted very little product. CEO issued a refund to us after he received a letter. In my opinion and 35 years in retail management; this is product liability. I am writing to the CEO now to voice my disgust. I also believe LL is knowingly selling "wet" NOT KILN DRIED product. 2 flooring contractors independently walked my home and stated installation was done correctly in there opinion. I believe legal action will be necessary. I don't think the CEO will venture from their customer support teams reply. [9]

---

[9] https://www.4inspirationsphotographyblog.com/suzanne-mcgrath-photograp/2013/04/a-product-review-morningstar-bamboo-click-floors/comments/page/2/#comments (last visited August 16, 2021)

**D.     Defendant's Warranty Practices and Procedures Also Put Them on Notice of the Products' Defects**

61.     When consumers complain to their local Lumber Liquidators store about the Product's defects, they are directed to contact the corporate customer care department for assistance.

62.     Defendant's corporate customer care department requests that each customer provide additional information, such as photo evidence, regarding the alleged defects.

63.     The Defendant then determines whether to order an inspection of the flooring or not.

64.     Inevitably, Defendant determines that the defects complained of are the result of some other factor, such as ambient moisture or improper installation, excluded by the warranty, and denies the claim.

65.     After the original Complaint in Gold was filed, over a hundred comments were received, including the following two about Product purchased in 2013 that describe Defendant's practice of always blaming the consumer.

> Purchased 1400 S.F. of Morningstar carbonized strand bamboo in July 2013 and had it professionally installed by their installer. Same problems as everyone else speaks of. Worst problems are shrinking and gaps. Still continues to shrink a year and a half later. Went through entire claim process with Lumber Liquidators. Arbitrarily turned down at every step. Paid for two different professional flooring inspectors, and on their advice paid for professional re-installs of large sections twice. Shrinking and gaps continue to happen. I have detailed and contemporaneous notes on all events and conversations, and would like to be part of the class action suit.[10]

---

[10] https://topclassactions.com/lawsuit-settlements/lawsuit-news/45644-lumber-liquidators-facing-bamboo-flooring-class-action/# (last visited August 16, 2021)

20

I have had the same issue with my LL Morning Star Bamboo flooring (we had over 2000 sqft installed). The floors began to warp and buckle within 3 months after installation in October 2013. I went through the entire claim process with LL and received a letter from them informing me that the issue with my flooring has nothing to do with the product itself and everything to do with a moisture issue (despite purchasing the most expensive moisture barrier/adhesive they sell). They will take NO responsibility for anything. I have fought with the installer and my contractor, and am now purchasing new flooring and working out the rest with my contractor. I am now concerned about the formaldehyde. I have a neurological condition and cannot have this s*&t in my home!!! Please send me some information as to what I can do, and whether ALL of the flooring needs to come out.[11]

66.    Defendant has continued this uniform pattern of denying valid warranty claims well into 2020 and beyond.

67.    The Fluhartys were subject to this conduct when they attempted to assert a valid warranty claim in 2020. Their claim was also denied.

## CLASS ACTION ALLEGATIONS

68.    Plaintiffs bring this action as a class action pursuant to Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and the class. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements as set forth in Rule 23(a) and Rule 23(b)(3).

69.    Plaintiffs advance this action on behalf of the following classes (together, the "Class" or "Class Members"):

Arkansas Class: All individuals in Arkansas who purchased for personal, family, or household use, Morning Star Strand Bamboo Flooring manufactured and sold by Lumber Liquidators, Inc. from March 16, 2019 to present. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

National Class: All individuals in the United States who purchased for personal, family, or household use, Morning Star Strand Bamboo Flooring manufactured and sold by

---

[11] *Id.*

Lumber Liquidators, Inc. from March 16, 2019 to present. Excluded from the Class are Defendants, their legal representatives, assigns and successors and any entity in which Defendants have a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

70.     Numerosity (Rule 23(a)(1)). Although the actual size of the Classes is uncertain, Plaintiffs are informed and believe the Classes are comprised of many of thousands of property owners, making joinder impractical. The disposition of these Class Members in a single class action will provide substantial benefits to all parties and to the Court.

71.     Commonality (Rule 23(a)(2)). There exist questions of law and fact common to all Class Members. Common questions include, but are not limited to, the following:

   a.   Whether the Product is subject to premature failure well in advance of its represented 50-year useful life;

   b.   Whether the Product is not suitable for use as a long-term flooring product;

   c.   Whether Defendant knew, or should have known, of the defective nature of the Product before making available for purchase and use by the Plaintiffs and Class Members;

   d.   Whether Defendant failed to disclose to Plaintiffs and Class Members the defective nature of the Product;

   e.   Whether Defendant, through making misleading representations of material facts regarding the Product's hardness and omitting other material facts regarding the particular susceptibility of the Product to cupping, warping, scratching, denting, and other defects, had a duty to disclose full information regarding the Product's characteristics;

   f.   Whether Defendant's failure to inform purchasers that the Product was susceptible to the defects alleged herein was a material omission, the

nondisclosure of which was a deceptive sales practice under the consumer protection statutes of applicable state law;

g.  Whether Defendant owed a duty to Plaintiffs and Class Members to exercise reasonable and ordinary care in the testing, design, production, manufacturing, warranting, marketing, and sale of the Product;

h.  Whether Defendant breached its duties to the Plaintiffs and Class Members by designing, manufacturing, producing, marketing, advertising, and selling defective flooring to Plaintiffs and Class Members;

i.  Whether Defendant had a duty to Plaintiffs and Class Members to disclose the true nature of the Product;

j.  Whether the facts not disclosed by Defendant to Plaintiffs and Class Member are material facts;

k.  Whether Defendant knew, or should have known that the Product would prematurely fail, is not suitable for use as flooring in residences or businesses, and is otherwise is not as represented by Defendant;

l.  Whether Defendant violated Arkansas Deceptive Trade Practices Act (Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*), when it concealed, made partial misleading representations, or failed to disclose the true nature of the Product, and led consumers to believe, through its advertising, warranties, and other express representations that the Product had characteristics that it did not actually have, and that the warranty was not a finished surface only warranty;

m.  Whether Defendant is liable for breach of implied warranty;

23

n.  Whether Defendant is liable for non-disclosure;

o.  Whether Plaintiffs and Class Members are entitled to compensatory damages, restitution, and the amounts thereof respectively;

p.  Whether Defendant should be declared financially responsible for notifying all Class Members of the defective Product and for the costs and expenses of repair and replacement of all defective flooring materials and providing restitution of monies paid and inadequate value given; and

q.  Whether Defendant should be ordered to disgorge, for the benefit of Class Members, all or part of their ill-gotten profits received from the sale of defective Product and/or to make full restitution to Plaintiffs and Class Members.

72.  Typicality (Rule 23(a)(3)). The claims of the representative Plaintiffs are typical of the claims of Class Members, in that the representative Plaintiffs, like all Class Members, own a structure in which the defective Product was installed and failed prematurely. The representative Plaintiffs, like all Class Members, have suffered a common injury: Plaintiffs will incur the cost of repairing and/or replacing the defective Product in their homes and repairing any resultant consequential damage to other building components. The factual basis of Defendant's misconduct is common to all Class Members.

73.  Adequacy (Rule 23(a)(4)). Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained counsel with substantial experience in prosecuting consumer class actions, including actions involving defective building products, failure to disclose material information regarding product performance, and violation of consumer protection statutes. Plaintiffs and their counsel are committed to vigorously

24

prosecuting this action on behalf of the Classes and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interests adverse to those of the Classes.

74.     Predominance of Common Questions (Rule 23(b)(3)). Common questions of law and fact predominant over any questions involving individualized analysis. Fundamentally, there are no material questions of fact or law that are not common to Class Members. Common issues of fact include: All Class Members purchased the same Product and received the same misrepresentations, evasions, and omissions. The performance of the Product relative to its represented qualities is a common question, as is the Defendant's knowledge regarding the Product's performance and Defendant's uniform omission to Class Members of these material facts. Common questions of law include whether Defendant's conduct violates Arkansas' consumer protection statutes and other law, and the Class Members' entitlement to damages and remedies.

75.     Superiority (Rule 23(b)(3)). Plaintiffs and Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of the subject controversy. Because of the relatively small size of the individual Class Members' claims, most Class Members likely would find the cost of litigating their individual claims to be prohibitive and will have no effective remedy at law. Thus, absent a class action, Class Members will continue to incur damages and Defendant's misconduct will proceed without remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants and promotes consistency and efficiency of adjudication. There is no

impediment to the management of this action because of the virtual identity of the common questions of law and fact to all Class Members.

## FIRST CAUSE OF ACTION
### (Arkansas Deceptive Trade Practices Act, Ark. Code Ann. § 4-88-101 *et seq.*)
### Arkansas Class

76.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

77.     Defendant engaged in unfair competition or unfair or deceptive acts or practices in violation of the Arkansas Deceptive Trade Practices Act (ADTPA), Ark. Code Ann. § 4-88-101*et. seq.* when Defendant represented, through its advertising and other express representations, that the Product had benefits or characteristics that the Defendant knew it did not actually have and when Defendant made misleading statements about the Product's hardness without further disclosing that factors other than the Product's hardness can lead to the Product easily scratching and denting and manifesting other defects complained of by Plaintiffs and Class Members. Defendant further violated the ADTPA when Defendant falsely represented that the Product was of a particular standard or quality. Finally, Defendant violated the ADTPA when it advertised the Product with the intent not to sell it as advertised.

78.     The Defendant intended that consumers rely on its deceptive trade practices. Defendant's deceptive practices were specifically designed to induce Plaintiffs and Class Members to purchase the Product. Defendant's installation instructions were inadequate for use with the product, resulting in the damage claims asserted herein. Defendant engaged in marketing efforts as detailed in the general allegations, to reach Class Members, their agents,

and/or third parties on whom they relied to persuade them to purchase and install the Product manufactured by Defendant, or to purchase homes and other structures in which the defective Product manufactured by Defendant has been installed.

79.     The Plaintiffs suffered actual financial loss in the form of the cost of the defective Product, the cost of installing the defective Product, the cost of the replacement flooring and the labor associated thereto.

80.     The Plaintiffs financial loss was proximately caused by their reliance of the Defendant's deceptive and unfair trade practices.

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, demand judgment against Defendant, and each of them, for restitution and/or disgorgement of funds paid to Defendant by Plaintiffs and Class Members to purchase the Product, or the value of the product in their home or structure, or in the form of repair and/or replacement of the defective Product on the Class Members' homes and other structures, plus costs and attorneys' fees pursuant to Ark. Code Ann. § 4-88-113.

## SECOND CAUSE OF ACTION
### (Violation of the Consumer Protection Acts of 50 States and the District of Columbia)
### National Class

81.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

82.     Plaintiffs bring this claim on behalf of the National Class for violation of the consumer protection acts of each of the States of the United States, and the District of Columbia.

83.     Plaintiffs bring these statutory consumer protection claims pursuant to the substantially similar "Consumer Protection Acts" identified below, all of which were enacted

27

and designed to protect consumers against unlawful, fraudulent, and/or unfair business acts and practices.

84.     The following consumer protection acts are collectively referred to herein as the "Consumer Protection Acts":

      a.   ALA. CODE § 8-19-1 et seq. (Alabama);

      b.  ALASKA STAT. ANN. § 45.50.471 et seq. (Alaska);

      c.  ARIZ. REV. STAT. ANN. § 44-1521 et seq. (Arizona);

      d.  CAL. BUS. & PROF. CODE § 17200 et seq. and CAL. CIV. CODE §1750 et (California);

      e.  COLO. REV. STAT. ANN. § 6-1-101 et seq. (Colorado);

      f.  CONN. GEN. STAT. ANN. § 42-110a et seq. (Connecticut);

      g.  DEL. CODE ANN. tit. 6, § 2511 et seq. (Delaware);

      h.  D.C. CODE ANN. § 28-3901 et seq. (District of Columbia);

      i.   FLA. STAT. ANN. § 501.201 et seq. (Florida);

      j.   GA. CODE ANN. § 10-1-370 et seq. and GA. CODE ANN. § 10-1-390 et seq. (Georgia);

      k.  HAW. REV. STAT. ANN. § 480-1 et seq. and HAW. REV. STAT. ANN. § 481A-1 et seq. (Hawai'i);

      l.   IDAHO CODE ANN. § 48-601 et seq. (Idaho);

      m. 815 ILCS 505/1 et seq. (Illinois);

      n.  IND. CODE ANN. § 24-5-0.5-0.1 et seq. (Indiana);

      o.  IOWA CODE § 714.16 et seq. (Iowa);

      p.  KAN. STAT. ANN. § 50-623 et seq. (Kansas);

q.   KY. REV. STAT. ANN. § 367.110 et seq. (Kentucky);

r.   LA. STAT. ANN. § 51:1401 et seq. (Louisiana);

s.   ME. REV. STAT. tit. 5, § 205-A et seq. (Maine);

t.   MD. CODE ANN., COM. LAW § 13-101 et seq. (Maryland);

u.   MASS. GEN. LAWS ANN. ch. 93A, § 1 et seq. (Massachusetts);

v.   MICH. COMP. LAWS ANN. § 445.901 et seq. (Michigan);

w.   MINN. STAT. ANN. § 325F.68 et seq., MINN. STAT. ANN. § 325D.09 et seq.,
     (Minnesota);

x.   MISS. CODE ANN. § 75-24-1 et seq. (Mississippi);

y.   MO. ANN. STAT. § 407.010 et seq. (Missouri);

z.   MONT. CODE ANN. § 30-14-101 et seq. (Montana);

aa.  NEB. REV. STAT. ANN. § 59-1601 et seq. (Nebraska);

bb.  NEV. REV. STAT. ANN. § 41.600 and NEV. REV. STAT. ANN. §598.0903 *et
     seq*. (Nevada);

cc.  N.H. REV. STAT. ANN. § 358-A:1 et seq. (New Hampshire);

dd.  N.J. STAT. ANN. § 56:8-1 et seq. (New Jersey);

ee.  N.M. STAT. ANN. § 57-12-1 et seq. (New Mexico);

ff.  N.Y. GEN. BUS. LAW. § 349 et seq. (New York);

gg.  N.C. GEN. STAT. ANN. § 75-1 et seq. (North Carolina);

hh.  N.D. CENT. CODE ANN. § 51-15-01 et seq. (North Dakota);

ii.  OHIO REV. CODE ANN. § 1345.01 et seq. (Ohio);

jj.  OKLA. STAT. ANN. tit. 15, § 751 et seq. (Oklahoma);

kk.  OR. REV. STAT. ANN. § 646.605 et seq. (Oregon);

ll.  73 PA. STAT. ANN. § 201-1 et seq. (Pennsylvania);

mm.  6 R.I. GEN. LAWS ANN. § 6-13.1-1 et seq. (Rhode Island);

nn. S.C. CODE ANN. § 39-5-10 et seq. (South Carolina);

oo. S.D. CODIFIED LAWS § 37-24-1 et seq. (South Dakota);

pp. TENN. CODE ANN. § 47-18-101 et seq. (Tennessee);

qq. TEX. BUS. & COM. CODE ANN. § 17.41 et seq. (Texas);

rr.  UTAH CODE ANN. § 13-11-1 et seq. (Utah);

ss. VT. STAT. ANN. tit. 9, § 2451 et seq. (Vermont);

tt.  VA. CODE ANN. § 59.1-196 et seq. (Virginia);

uu. WASH. REV. CODE ANN. § 19.86.010 et seq. (Washington);

vv. W.VA. CODE ANN. § 46A-6-101 et seq. (West Virginia);

ww. WIS. STAT. ANN. § 100.20 (Wisconsin); and

WYO. STAT. ANN. § 40-12-101 et seq. (Wyoming).

85.    Plaintiffs and the Class members have standing to assert claims under the Consumer Protection Acts because they are consumers within the meaning of the Consumer Protection Acts and Defendant's practices were addressed to the market generally and otherwise implicate consumer protection concerns.

86.    Defendant has engaged in unfair, unlawful and deceptive trade practices by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint. In particular, Defendant has engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a. deceptively representing to Plaintiffs, and those similarly situated, the Product was of a certain quality or standard when it was not;

    b.   deceptively representing that the Product met industry standards when, at best, it lacked credible evidence to support those claims, and, at worst, knew the Product would fail prematurely, was not suitable for use as flooring, and otherwise was not as warranted and represented by Defendant;

    c.   failing to disclose to, or concealed from, consumers, installers, and distributors material facts about the defective nature of the Product;

    d.   failing to disclose its own knowledge of the defective nature of the Product;

    e.   limiting its warranty obligations in an unfair and unconscionable way in light of its failure to disclose the defective nature of the Product.

    f.   engaging in fraud, deceit, and misrepresentation as described herein; and

    g.   being unjustly enriched, as described herein;

87.     Defendant intended that Plaintiffs and the Class members would rely on the unlawful, fraudulent, and/or unfair business acts and practices alleged herein.

88.     Plaintiffs and those similarly situated relied to their detriment on Defendant's unfair, deceptive and unlawful business practices. Had Plaintiffs and those similarly situated been adequately informed and not deceived by Defendant, they would have acted differently by not purchasing (or paying less for) Defendant's Product.

89.     Defendant's acts and omissions are likely to deceive the general public.

90.     Defendant's actions, which were willful and wanton, constitute intentional violations of the Consumer Protection Acts.

91.     Defendant engaged in these unfair practices to increase its profits.

92.     Accordingly, Defendant has engaged in unlawful trade practices, as defined and prohibited by the Consumer Protection Acts.

31

93.     The aforementioned practices, which Defendant has used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendant's competitors as well as injury to the general public.

94.     Plaintiffs seek, on behalf of those similarly situated, full damages, as necessary and according to proof, to restore any and all monies acquired by Defendant from Plaintiffs, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon. Plaintiffs also seek to recover attorneys' fees, costs, and expenses to be assessed against Defendant, within the limits set forth by applicable law.

95.     Plaintiffs, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the Consumer Protection Acts alleged to have been violated herein

96.     As a direct and proximate result of such actions, Plaintiffs and the other members of the Classes have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. Among other things, Plaintiffs and the Classes lost the amount they paid for the Products.

97.     As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

**THIRD CAUSE OF ACTION**
**(Breach of Implied Warranty)**
**Arkansas Class & National Class**

32

98.     Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

99.     Plaintiffs and Class members are "buyers" within the meaning of each of their respective State's implied warranty statutes. See, e.g., ARK. CODE ANN. § 4-2-103(1); CAL. CIV. CODE § 1791(b); TEX. BUS. & COM. CODE § 2.103; N.Y.U.C.C. LAW § 2-103; FLA. STAT. § 672.103; 810 ILCS 5/2-103; ILL. REV. STAT., CH. 26, PARA. 2-103.

100.    Lumber Liquidators is a "seller" and the Product is a "consumer good" within the meaning of each state's warranty statutes. See, e.g. ARK. CODE ANN. §§ 4-2-103(1) & (3); CAL. CIV. CODE § 1791(a), 24 (l); N.Y.U.C.C. LAW §§ 2-103(1) (d) & 2-105; FLA. STAT. §§ 672.103(1) (d) & 672.105;  TEX. BUS. & COM. §§ 2.103(a) (4) & §2.105(a); 810 ILCS 5/2-103; ILL. REV. STAT., CH. PARA. 2-103(1) (d); 810 ILCS 5/2-105; ILL. REV. STAT., CH. 26, PARA. 2- 105.

101.    Lumber Liquidators impliedly warranted to Plaintiffs and the Classes that the Product was "merchantable" within the meaning of e.g. ARK. CODE ANN. § 4-2-314; CAL. CIV. CODE §§ 1791.1(a) & 1792; CAL. CIV. CODE § 1791(a); N.Y.U.C.C. LAW § 2-314; FLA. STAT. § 672.314; TEX. BUS. & COM. § 2.314; 810 ILCS 5/2-314; and ILL. REV. STAT., CH. 26, PARA. 2-314. However, the Product does not have the quality that a buyer would reasonably expect and was therefore not merchantable.

102.     Lumber Liquidators' Product is not fit for the ordinary purposes for which such goods are sold.

103.     Any attempt by Lumber Liquidators to disclaim the implied warranty of merchantability is unenforceable, as the disclaimer failed to mention the implied warranty of

merchantability and was not conspicuous as required by law, and was both procedurally and substantively unconscionable, rendering it unenforceable.

104.    As a result, Plaintiffs and the Class members were injured through their purchase of non-merchantable Products.

105.    Under each state's implied warranty statutes, Plaintiffs and Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of the product, or the overpayment of amounts they paid for the Product.

## FOURTH CAUSE OF ACTION
### (Fraud/Non-Disclosure/Concealment)
### Arkansas Class and National Class

106.    Plaintiffs hereby incorporate by reference the allegations contained in the preceding paragraphs of this Complaint.

107.    As alleged above Lumber Liquidators misrepresented, concealed and suppressed material facts concerning the Product.

108.    Defendant affirmatively represented to the general public the Product carried a fifty-year (50) warranty. Through these representations, Defendant created a reasonable expectation among ordinary consumers and in the construction trades that the Product would have a useful life of at least fifty (50) years. This was a false misrepresentation that the Defendant knew was false.

109.    Moreover, Defendant had a duty to disclose facts concerning the inability of the Product to withstand ambient moisture because there were special circumstances in existence so that the Defendant, who had superior knowledge and access to the facts, knew they were not known to or reasonably discoverable by Plaintiffs and the Classes. The omitted and concealed facts were material.

34

110.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its profits, and did so at the expense of Plaintiffs and the Classes.

111.    But for the misrepresented and omitted facts, Plaintiffs and all Class members would have acted differently by not purchasing Defendant's Product or paying less for it. And, in fact, Plaintiffs and the Classes were unaware of these omitted material facts and would not have acted as they did if they had known of the misrepresented, concealed, and suppressed facts.

112.    Plaintiffs' and the Classes' actions were justified. Lumber Liquidators was in exclusive control of the material facts and such facts were not known to the public, Plaintiffs, or the Classes.

113.    Because of the misrepresentations, concealment and suppression of the facts, Plaintiffs and the Classes sustained damages because they purchased flooring products that they would not have purchased.

## PRAYER FOR RELIEF

114.    WHEREFORE, Plaintiffs pray that the Court enter judgment against Defendant, and each of them, and in favor of Plaintiffs, and to award the following relief:

a.  Certification of an Arkansas class and National class and appointing the Fluhartys as class representatives for each;

b.  Appointment of the undersigned as counsel for the proposed Class(es);

c.  A declaration that Defendant's actions complained of herein violate the state consumer protection statutes and common law implied warranty and non-disclosure;

d.  A declaration that Defendant is financially responsible for notifying all Class Members;

35

e.  Injunctive relief requiring Defendant to replace and/or repair all Products installed in structures owned by the Class;

f.  A declaration that Defendant must disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of defective Product, and/or to make full restitution to Plaintiffs and the Class Members;

g.  An award of costs and attorneys' fees, as allowed by law, and/or from a common fund created hereby;

h.  Leave to amend to conform to the evidence presented at trial; and

i.  Orders granting such other and further relief as may be appropriate.

## **JURY TRIAL DEMAND**

Plaintiffs hereby demand a jury trial for all individual and Class claims so triable.

Respectfully,

By: _____

Aaron M. Heffington, Bar No. 2013227
Dylan H. Potts, Bar No. 2001258
GILL RAGON OWEN, P.A.
425 West Capitol Ave., Suite 3800
Little Rock, Arkansas 72201
Telephone:  (501) 376-3800
Facsimile:  (501) 372-3359
potts@gill-law.com
heffington@gill-law.com

**THE POTTS LAW FIRM, LLP**

/s/ Derek H. Potts
Derek H. Potts (Ark. Bar No. 2006131)
Texas State Bar No. 24058657
425 W. Capitol Avenue, Ste. 3800
Little Rock, AR 72201
Phone: (501) 404.8173
Fax: (713) 583.5388
dpotts@potts-law.com

36